UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| GEORGE R. BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-1282 |
| | ) | |
| v. | ) | Honorable Gordon J. Quist |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security finding that plaintiff was not

entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On

December 18, 2008, plaintiff filed his applications for benefits alleging a December 5, 2003 onset

of disability.[1] (A.R. 172-82). Plaintiff's disability insured status expired on December 31, 2008.

Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that

he was disabled on or before December 31, 2008. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th

Cir. 1990).

---

[1]Administrative *res judicata* stemming from the denial of an earlier claim barred any onset
of disability before March 30, 2007. (A.R. 11; *see also* A.R. 72-83). Further, SSI benefits are not
awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see
Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also  Newsom v. Social Security
Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable
is the month after the application for SSI benefits is filed. Thus, January 2009 is plaintiff's earliest
possible entitlement to SSI benefits.

Plaintiff's claims were denied on initial review. (A.R. 99-107). On February 17, 2011, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 27-65). On June 10, 2011, the ALJ issued his decision finding that plaintiff was not disabled. (A.R. 11-21). On September 27, 2012, the Appeals Council denied review (A.R. 1-4), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1.      The ALJ did not adequately evaluate plaintiff's cardiac impairment;

2.      The ALJ "failed to properly evaluate" the opinion of plaintiff's treating physician; and

3.      The ALJ "failed to consider" the combined effect of plaintiff's impairments.

(Plf. Brief at 9, 11, 13, docket # 15). I recommend that the Commissioner's decision be affirmed.


**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v.*

*Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from December 5, 2003, through December 31, 2008, but not thereafter. (A.R. 13). Plaintiff had not engaged in substantial gainful activity on or after December 5, 2003. (A.R. 13). Plaintiff had the following severe impairments: obesity, diabetes mellitus and diabetic neuropathy,

history of gout, obstructive sleep apnea, dilated cardiomyopathy, hypertension, history of myocardial

infarction and congestive heart failure, hyperlipidemia, asthma, midfoot arthritis, and mild

degenerative disc disease of the lumbar and cervical spine. (A.R. 13). Plaintiff did not have an

impairment or combination of impairments which met or equaled the requirements of the listing of

impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity

(RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has
> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)
> and 416.967(a) with the following: he can lift and carry 10 pounds occasionally and less than
> 10 pounds frequently; he can sit for 6 hours, and stand and/or walk 2 hours, in an 8-hour
> workday; he can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs;
> he cannot climb ladders, ropes or scaffolds; he can occasionally push and pull with the lower
> extremities to include operation of foot pedals; he cannot work in an area with concentrate[d]
> exposure to fumes, odors, dusts, gasses, poor ventilation, cold temperature extremes or
> excessive vibration; he cannot work in an area with exposure to dangerous machinery or
> unprotected heights.

(A.R. 17). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully

credible. (A.R. 17-19). Plaintiff could not perform any past relevant work. (A.R. 19). Plaintiff was

38-years-old as of the date of his alleged onset of disability, 43-years-old when his disability insured

status expired, and 46-years-old on the date of the ALJ's decision. Thus, at all times relevant to his

claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 20). Plaintiff

has at least a high-school education and is able to communicate in English. (A.R. 20). The ALJ

found that the transferability of jobs skills was not material to a determination of disability. (A.R.

20). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical

question regarding a person of plaintiff's age with his RFC, education, and work experience, the VE

testified that there were approximately 6,100 jobs in Michigan's Lower Peninsula that the

hypothetical person would be capable of performing. (A.R. 57-60). The ALJ found that this constituted a significant number of jobs. Using Rules 201.21 and 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 20-21).

**1.**

Plaintiff argues that the ALJ did not "adequately evaluate" his cardiac impairment when he found that plaintiff did not satisfy the requirements of listing 4.02. (Plf. Brief at 9-11; Reply Brief at 2-3). Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006). "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009). It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, 507 F. App'x 470, 472 (6th Cir. 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

The requirements of Listing 4.02 are as follows:

4.02 *Chronic heart failure* while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

A. Medically documented presence of one of the following:

1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Part 404, Subpart P, App. 1, § 4.02. The ALJ considered all the evidence regarding plaintiff's cardiac impairment, including the evidence predating plaintiff's earliest possible onset of

disability date, March 31, 2007, and after plaintiff's date last disability insured, December 31, 2008.[2]

(A.R. 13-17). The ALJ found that plaintiff's impairments did not meet or equal the requirements

of any listed impairment, including listing 4.02:

> The record does not contain any diagnostic findings, signs, symptoms, or laboratory results
> that rise to the listing level severity of sections 4.02, 4.04, 4.05, 4.06, 4.09, 4.10, 4.11, or 4.12
> which require chronic heart failure, ischemic heart disease, recurrent arrhythmias,
> symptomatic congenital heart disease, heart transplant, aneurysm of aorta or major branches,
> chronic venous insufficiency, or peripheral arterial disease, respectively. Though having an
> isolated instance of significantly compromised ejection fraction during the period at issue,
> this occurred during an episode of acute heart failure engendered by noncompliance. The
> claimant's ejection fraction was not reduced to listing level dysfunction for any prolonged
> interval, and certainly not for any period of 12 consecutive months. The record fails to
> demonstrate evidence of systolic or diastolic failure with persistent symptoms of heart failure
> limiting the ability to independently initiate, sustain, or complete activities of daily living,
> three or more separate episodes of acute congestive heart failure within a 12-month period,
> or an inability to perform an exercise tolerance test. The record evidence further fails to
> demonstrate ischemic heart disease with sign- or symptom-limited exercise tolerance test,
> three separate ischemic episodes each requiring revascularization, or coronary artery disease
> demonstrated by angiography. The record evidence likewise fails to demonstrate evidence
> of profound end-organ damage.

(A.R. 17).

Plaintiff places great emphasis on ejection fraction figures from his hospitalizations

in December 2010 and March 2011. (Brief at 8, 11; Reply Brief at 2). The low ejection fraction

recorded in December 2010 could not possibly satisfy part A(1) of listing 4.02, because plaintiff

had been noncompliant and had not taken his medication for five months. (*see* A.R. 929, 939).

Listing 4.02 makes it clear that the Listing is satisfied only when the claimant experiences these

---

[2]Evidence dated after December 31, 2008, was relevant to plaintiff's claim for SSI benefits.
However, on his claim for DIB benefits, documents generated after expiration of his disability
insured status are "minimally probative" and are considered only to the extent that they illuminate
a claimant's health before the expiration of his insured status. *See Higgs v. Bowen*, 880 F.2d 860,
863 (6th Cir. 1988); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002)
("Evidence relating to a time period outside the insured period is only minimally probative.").

symptoms and signs while following "a regimen of prescribed treatment." *See Davis v. Commissioner*, No. 1:13-cv-143, 2014 WL 357312, at * 8 (W.D. Mich. Jan. 31, 2014); *Draggett v. Colvin*, No. 12-cv-575, 2013 WL 5488910, at * 3 (W.D.N.Y. Sept. 30, 2013); *Blackburn v. Colvin*, No. 3:CV-12-21, 2013 WL 3789092, at * 4-5 (M.D. Pa. July 19, 2013); *Childs v. Commissioner*, No. 1:11-cv-817 , 2013 WL 265090, at * 4 (S.D. Ohio Jan. 23, 2013).

The ejection fraction figure that plaintiff extracted from his March 2011 hospital records fares no better. In March 2011, plaintiff appeared at the Ingham Regional Medical Center complaining of chest pain. (A.R. 980). He related that he had not seen his cardiologist, Dr. Laman, for about six months. (A.R. 980). His chest x-ray was unremarkable, his EKG was normal, and his electrolytes were normal. (A.R. 980). Hospital records indicate that Matthew D. Wilcox, D.O., acted as a consulting physician. Dr. Wilcox noted: "Last ejection fraction 20% to 25% that was done in December 2010." (A.R. 992). It does not appear that there was any ejection fraction recorded within this low range in March 2011. Rather, it appears that the consulting cardiologist was indicating that if there was an ejection fraction of 25% while plaintiff was on appropriate medical therapy, that "[w]ould qualify for [an] automatic implanted cardiovertor defibrillator." (A.R. 993). This interpretation of Dr. Wilcox's notes is significantly reinforced by the fact that the hospital discharge summary indicates that no implant surgery occurred. (A.R. 980-81). The discharge summary does reflect a cardiac catheterization procedure performed by Christopher D'Haem, D.O. (A.R. 980; *see* A.R. 995-97). The catheterization revealed that plaintiff's coronary arteries were normal. Dr. D'Haem estimated that plaintiff's ejection fraction was 40%. (A.R. 980, 996). This ejection fraction figure fails to satisfy part A(1) of listing 4.02. Further, part A cannot be satisfied by a low ejection fraction recorded "during an episode of acute heart failure." The relevant

measurements are those taken during a period of stability.  *See Hill v. Colvin*, No. 13-37, 2013 WL

6095506, at * 4 (E.D. Ky. Nov. 20, 2013); *Blackburn*, 2013 WL 3789092, at * 5.  Plaintiff's ejection

fractions taken during periods of stability revealed cardiac function significantly better than the level

of impairment necessary to satisfy part A(1) of the listing.  (*see e.g.*, A.R. 689, 792, 910).

Plaintiff makes a passing argument that his left ventricle measured  "greater than 6

at 6.5 cm on 9/28/2009."  (Plf. Brief at 11).  This does not approach satisfying his burden under part

A(1).  It is not enough to focus on this enlargement of the left ventricle.  It was plaintiff's burden to

demonstrate that he satisfied all of the requirements of part A(1), including "systolic failure" as

defined in section 4.00(D)(1)(a)(i).  *See* 20 C.F.R. § Part 404, Subpart P, App. 1, § 4.02(A)(1).

Section 4.00(D)(1)(a)(i) provides a definition of the "predominant systolic function" type of chronic

heart failure:  "*Predominant systolic dysfunction* (the inability of the heart to contract normally and

expel sufficient blood), which is characterized by a dilated, poorly contracting left ventricle and

reduced ejection fraction (abbreviated EF, it represents the percentage of the blood in the ventricle

actually pumped with each contraction)."  *Id.* at § 4.00(D)(1)(a)(i).  On August 18, 2009, plaintiff's

echocardiogram "revealed that the left and right ventricular systolic function [was] normal."  (A.R.

910).  His left ventricle was "mildly enlarged."  (A.R. 910).  On September 28, 2009, his

cardiologist, Kirk Laman, D.O., noted the test results, including plaintiff's "dilation of the left

ventricle at 6.5 cm."  (A.R. 907).  Dr. Laman observed that plaintiff weighed 437.60 lbs. and was

71 inches tall, yielding a body mass index of 61.  (A.R. 908).  Dr. Laman stated that plaintiff's

previously low ejection fraction had returned to "normal."  (A.R. 908).  It remained "normal" during

a follow-up examination on March 19, 2010.  (A.R. 904).  Plaintiff has not shown that the ALJ failed

to "adequately evaluate[]" his cardiac impairment under part A of listing 4.02.  Further, he fails to

make any coherent argument addressing the ALJ's part B findings and the evidence supporting those

findings. It was plaintiff's burden to demonstrate that he satisfied all the requirements of listing

4.02. *See Elam*, 348 F.3d at 125. The ALJ's finding that plaintiff did not meet or equal the

requirements of any listed impairment, including listing 4.02, is supported by more than substantial

evidence.

**2.**

Plaintiff argues that the ALJ "failed to properly evaluate" a statement made by

Shannon Wiggins, D.O., of East Michigan Family Clinic on July 20, 2009, that plaintiff "need[ed]

to be off work for lifetime." (Plf. Brief at 11-13)(citing A.R. 891). The issue of whether the

claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th

Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special

significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d

506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he

determination of disability [is] the prerogative of the Commissioner, not the treating physician.");

*accord*, *Gentry v. Commissioner*, No. 5719, slip. op. at 27-28 (6th Cir. Feb 4, 2014). Likewise, "no

special significance"[3] is attached to treating physician opinions regarding the credibility of the

plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the

requirements of a listed impairment because they are administrative issues reserved to the

---

[3]"We will not give any special significance to the source of an opinion on issues reserved to
the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§
404.1527(d)(3), 416.927(d)(3).

Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"  *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of

factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ found that Dr. Wiggins's conclusory statement that plaintiff needed to be "off work for [his] lifetime" was not entitled to significant weight because the issue of disability is reserved to the Commissioner: "The record contains . . . a note from an East Michigan Family Care clinician indicating that he (the claimant) needed to be off work for his lifetime (Exhibit 18F p.51). Of course, medical opinions on the ultimate question of disability are not binding on the Commissioner." (A.R. 19). The ALJ found that the opinion offered (A.R. 891) was conclusory and not well supported by medically acceptable clinical and laboratory diagnostic techniques, and as such was "not entitled to controlling (or significant weight) under 20 CFR 404.1527(d)(2) and 416.927(d)(2) and Social Security Ruling 96-2p. Indeed, the opinion that the claimant cannot work is unaccompanied by any vocationally relevant limitations." (A.R. 19). I find that the ALJ correctly

applied the law and gave good reasons for the weight given to Dr. Wiggins's conclusory and unsupported opinion.

**3.**

Plaintiff argues that the ALJ "failed to consider" the combined effect of his impairments. (Plf. Brief at 13-15). The ALJ stated that he did consider the combined effect of plaintiff's impairments. (A.R. 12). Given this statement, the ALJ was not required to further elaborate on his thought process. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). An ALJ cannot "fragmentize" the claimant's "several impairments and the medical opinions regarding each of them so that he fails to properly evaluate their effect," *see Colwell v. Gardner*, 386 F.2d 56, 74 (6th Cir. 1967), and the ALJ did not do so here.

Plaintiff argues that the ALJ failed to give adequate consideration to his edema and should have given full credibility to his testimony that he needed to elevate his legs. (Plf. Brief at 14-15). The ALJ considered plaintiff's edema, gout, obesity, etc., when he found that plaintiff retained the RFC for a limited range of sedentary work. (A.R. 17-19). RFC is the most, not the least a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). In addition, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of

the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff testified that his gout was fairly well controlled when he took his medication. He testified that he would typically spend "half of the day" with his feet propped up. (A.R. 51). The ALJ gave careful consideration to plaintiff's testimony and the medical evidence regarding his edema. The ALJ noted that the increased lower extremity edema that plaintiff displayed in January 2009 had been "caused by his fail[ure] to take prescribed diuretic medication." (A.R. 15). In September 2009, plaintiff's duplex venous Doppler examination returned normal results. (A.R. 899). The ALJ considered the impact of plaintiff's obesity: "The claimant had a history of immoderate diet and is significantly obese. The Administrative Law Judge has considered how

weight affects the claimant's ability to perform routine movement and necessary physical activity within the work environment." (A.R. 18).

> In spite of his weight clinicians observed the claimant to ambulate without an assistive device and to retain functional range of motion. The claimant's neurological status in terms of motor power, reflex, activity, sensation, coordination, cerebellar and cranial nerve functions were intact, and his musculoskeletal and extremity reviews were typically free of deformity, clubbing, cyanosis, heat, discoloration, ulceration, diminished pulsation or atrophic changes. The evidence does not fully support the claimant's contentions as to the magnitude of his symptomatology and dysfunction including his expressed degree of fatigue, and need to recline with his legs elevated for substantial intervals on most days. Within testimony and the written record, it was reported that the claimant performed self-care tasks and other activities. The claimant prepared simple meals, washed dishes and laundered clothing. In addition, the claimant completed basic household cleaning and repair chores, operated a motor vehicle and did light shopping. Further, the claimant worked on cars at time[s], used a computer, spent time with family and friends, played cards, watched television, occasionally fished/camped, and vacationed (e.g., Cedar Point, Niagara Falls)(Exhibits 4E, 10E).

(A.R. 18-19). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. I find that the ALJ's factual findings regarding plaintiff's RFC and credibility are supported by more than substantial evidence.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  February 10, 2014                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).